In re Kenneth R. BLOCH and Charlotte
E. Bloch, Debtors.

Jeffrey A. WEINMAN, Trustee, Plaintiff,

v.

The WORD OF LIFE CHRISTIAN
CENTER, an Open Bible Standard
Church, Defendant.

Civ. A. No. 95–K–2711.
Bankruptcy No. 93–19972–RJB.
Adv. No. 95–1546 PAC.

United States District Court,
D. Colorado.

April 22, 1997.

Jeffrey A. Weinman, William A. Richey, Weinman, Cohen & Niebrugge, P.C., Denver, CO, for plaintiff.

Edwin G. Perlmutter, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The Plaintiff, Jeffrey Weinman, Trustee of the above-referenced bankruptcy proceeding, seeks to avoid the transfer of certain tithes and contributions made by Kenneth R. Bloch and Charlotte R. Bloch ("Debtors"), to the Defendant, The Word of Life Christian Center.

Pending are the parties' cross-motions for summary judgment. Jurisdiction exists under 28 U.S.C. § 1334. I grant the Plaintiff's Motion for Summary Judgment and deny that of the Defendant.

### I. *Background Facts.*

The facts are not disputed. The Debtors were members of the Defendant during 1992 and 1993 and have not given up their membership. Between 1991 and 1993, the Debtors attended the Defendant usually once a week, but sometimes up to four times a week. It is undisputed the Debtors are sincere in their religious faith.

On September 14, 1993, the Debtors, Kenneth R. Bloch and Charlotte R. Bloch, filed a Voluntary Petition for bankruptcy under Chapter 7. After filing the petition, the Debtors were divorced and stopped attending the Defendant for that reason and because Kenneth Bloch now resides in Colorado Springs.

During the period from September 14, 1991 through September 13, 1993, the Debtors tithed and contributed to the Defendant. They transferred $ 5,205.00 to the Defendant in 1993, and $ 6,328.00 in 1992.

The Debtors did not enter into a contract with the Defendant that legally required them to tithe or contribute to the Defendant but held the belief that they were morally required to do so. Many members of the Defendant do not tithe and/or contribute to the Defendant. Kenneth Bloch now attends another church in Colorado Springs to which he tithes.

The Debtors were granted a discharge by the bankruptcy court on January 25, 1994.

### II. *Standard for Motion for Summary Judgment.*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual rec-

ord and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment....

While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the non-movant's claim but need only point to an absence of evidence to support the non-movant's claim. If the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.

*Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (quoting *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

### III. *Merits.*

The Plaintiff moves for the entry of judgment against the Defendant on the first claim for relief pursuant to 11 U.S.C. § 548; second claim pursuant to 11 U.S.C. § 544 and Colo.Rev.Stat. § 38–8–106; and third claim under 11 U.S.C. § 550. Further, the Plaintiff also seeks summary judgment on certain affirmative defenses, namely the second (estoppel and laches), third (action not commenced within statutory time period), fourth (violation of the Free Exercise Clause and Freedom of Speech protection as provided by the First Amendment of the United States Constitution) and fifth (violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb(a)).

The Defendant seeks summary judgment on its fifth affirmative defense, asserting that the Plaintiff's attempt to collect religious contributions violates RFRA and on the grounds that the tithes are not fraudulent transfers which can be avoided under 11 U.S.C. § 548(a).

### A. *11 U.S.C. § 548(a)(2).*

Both parties seek summary judgment on the first claim for relief under 11 U.S.C. § 548(a)(2). Section 548, entitled "Fraudulent transfers and obligations," provides in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, ... that was made ... within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily - ...

(2) (A) received less than a reasonably equivalent value in exchange for such transfer ... and (B)(i) was insolvent on the date that such transfer was made....

11 U.S.C. § § 48.

As opposed to § 548(a)(1), the § 548(a)(2) "constructive fraud" provision does not require that a debtor act with actual intent to defraud the creditors before a transfer can be avoided. It operates to avoid transfers motivated by generosity, rather than fraud, reflecting the policy that an insolvent should be "just to his creditors before he is generous to others." *Morris v. Midway Southern Baptist Church (In re Newman)*, 203 B.R. 468, 473 (D.Kan.1996).

It is undisputed that the transfers at issue in the first claim for relief involved an interest of the Debtors in property and were made within one year of their bankruptcy filing. Nor is it disputed that the Debtors were insolvent on the dates of the various transfers. The only element of § 548(a)(2) in dispute is whether the Debtors "received less than a reasonably equivalent value in exchange for" the transfers.

The Defendant argues it gave reasonably equivalent value to the Debtors in exchange for the tithes and offerings they transferred to it. This value, it maintains, took the form of church services, spiritual, emotional, psychological, educational services and the basic operation of the Defendant. Therefore, it asserts, the Plaintiff's request for summary judgment under § 548 should be denied and judgment should be entered in the Defendant's favor on the first claim for relief.

■ "Value," as used in § 548, means "property, or satisfaction or securing of a present or antecedent debt of the debtor ...." § 548(d)(2)(A). "Debt" means "liability on a claim," while "claim" refers to a right to payment or to an equitable remedy for breach of performance. § 101. Contrary to the Defendant's assertions, the statute requires that the debtor must have been provided with something of economic, as opposed to religious or spiritual, value. *See In re Newman*, 203 B.R. at 473.

■ Even if one were to conclude, which I do not, that the services of the Defendant constituted "value," § 548(a)(2)(A) requires that any value received by the Debtors must have been "in exchange for" their contributions. Here, the Defendant provided services and benefits to the Debtors and its other members, regardless of whether or not they tithed. The Debtors' contributions were purely voluntary. They gave money to the Defendant from a sense of moral, rather than legal, obligation. Such contributions were in no way linked to the availability of the Defendant's services. *See id.*

The undisputed facts preclude a finding that the Debtors received reasonable value in exchange for their tithes and contributions to the Defendant, in the sense that those terms are used in the statute. Therefore, absent any valid affirmative defense, the Plaintiff is entitled to judgment on the first claim for relief under § 548(a)(2).[1]

### B. *Colorado Revised Statutes § 38–8–106.*

■ Both parties seek judgment on the second claim for relief pursuant to 11 U.S.C. § 544 and Colorado Revised Statutes § 38–8–106.

Under the Bankruptcy Code, "[t]he trustee may avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim...." 11 U.S.C. § 544(b) The Colorado Fraudulent Transfer Act pertinently provides:

(1) A transfer made ... by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made ... if the debtor made the transfer ... without receiving a reasonably equivalent value in exchange for the transfer ... and the debtor was insolvent at that time....

Colo.Rev.Stat. § 38–8–106 (1982 Repl.Vol., 1996 Cum.Supp.).

The Defendant raises a similar argument concerning "reasonably equivalent value" under the Colorado Statute that it does in relation to § 548. For the reasons already discussed, I reject this argument.

I find, absent any valid affirmative defense, the Plaintiff is entitled to judgment on the second claim for relief under 11 U.S.C. § 544 and Colo.Rev.Stat. § 38–8–101.

### C. *11 U.S.C. § 550.*

■ The Plaintiff seeks judgment on the third claim for relief under 11 U.S.C. § 550, which provides in relevant part:

[T]o the extent that a transfer is avoidable under section 544[and] 548 ... of this title, the trustee may recover ... the property transferred ... from -

(1) the initial transferee of such transfer....

11 U.S.C. § 550.

Because the Defendant was the initial transferee of the transfers by the Debtors, which I have found avoidable under § 544 and § 548, the Plaintiff is entitled to summary judgment on his third claim for relief to recover such transfers or the value thereof from the Defendant.

### D. *Estoppel and Laches.*

■ The Plaintiff seeks judgment on the Defendant's second affirmative defense that the Plaintiff is barred from asserting its claims by the doctrines of estoppel and laches. The Defendant asserts this defense involves matters of fact for the jury concerning the issue of the long delay of Plaintiff in seeking recovery of the fraudulent transfers.

---

1. Plaintiff requests a hearing to determine the amounts tithed and contributed to the Defendant with respect to his first and second claims for relief.

This bankruptcy proceeding commenced when the Debtors filed a voluntary Chapter 7 petition on September 14, 1993. It is undisputed that the Plaintiff was appointed trustee of the bankruptcy estate on October 22, 1993.

Section 546 of the Bankruptcy Code was amended in October 1994. The amendment applies only to bankruptcy proceedings where the petition was filed after October 22, 1994. The former § 546(a)(1) provided an action under §§ 544 or 548 could not be commenced after the earlier of two years after the appointment of a trustee or the time the case is closed or dismissed.

The Plaintiff filed an initial complaint on September 12, 1995 and the Amended Complaint on September 21, 1995, within the two year time limitation of former § 546. Equitable principles may not be used "to disregard unambiguous statutory language." *See Childress v. Middleton Arms, L.P. (In re Middleton Arms, Limited Partnership)*, 934 F.2d 723, 725 (6th Cir.1991) (citation omitted).

Accordingly, I will not apply equitable defenses to override the unambiguous statutory language of the former § 546(a)(1). *French v. F.A. Kohler Co. (In re Fisher)*, 162 B.R. 474, 477 (Bankr.N.D.Ohio 1993). Summary judgment is appropriate on the second affirmative defense.

### E. *Statutory Limitations Period.*

In its third affirmative defense, the Defendant asserts the Amended Complaint was not filed within the statutory time period as provided in 11 U.S.C. § 546(a)(1)(A). The current § 546(a)(1)(A) requires an action under § 544 or § 548 to be commenced within two years after the entry of the order for relief or one year after the appointment of the first trustee.

As already discussed, former § 546 is applicable to this bankruptcy proceeding, commenced before October 22, 1994, the effective date of the 1994 amendment. It is undisputed that the initial and amended complaints were filed within the two year period of the appointment of the Plaintiff as trustee, in compliance with the former § 546. Accord-

ingly, judgment is appropriate on the third affirmative defense.

### F. *First Amendment—Freedom of Speech and Free Exercise of Religion.*

■ As its fourth affirmative defense, the Defendant asserts the application of Title 11 of the Bankruptcy Code and the Colorado Fraudulent Transfer Act to recover tithes and/or contributions made by the Debtors to the Defendant violates the hybrid Free Exercise Clause and Freedom of Speech protection provided by the First Amendment of the United States Constitution and the Religious Freedom Clause of the Colorado Constitution.

The Free Exercise Clause of the First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I.

Governmental attempts to ban physical acts when they are engaged in for religious reasons are invalid unless such ban is justified by a compelling interest that is narrowly tailored to advance that interest. *Church of The Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532–33, 113 S.Ct. 2217, 2226–27, 124 L.Ed.2d 472 (1993). However, if prohibiting a religious practice is not the object of a law but merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been violated. *Employment Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990).

The right of free exercise does not relieve an individual of the duty to comply with a valid and neutral law of general applicability on the ground that the law prohibits conduct that his or her religion prescribes. *Id.* at 879, 110 S.Ct. at 1600. Nor does the First Amendment require that laws of general application be justified by a compelling governmental interest whenever they burden a particular religious practice. *Id.* at 883, 110 S.Ct. at 1602–03.

I find Section 548(a) to be a valid and neutral law which applies regardless of whether or not the debtor acted with reli-

gious motivation, or made the transfer to a religious institution. *See In re Newman,* 203 B.R. at 475; *In re Hodge,* 200 B.R. at 902–05. The definition of "reasonably equivalent value" is neutral toward religion, operating to exclude all types of unquantifiable benefits, not only those considered religious. *Id.* The distinction between economic and other types of "value" furthers "a significant, legitimate governmental interest of protecting general creditors against unjust diminution of an insolvent debtor's estate, while at the same time recognizing that prior to bankruptcy the estate remains the debtor's property." *Id.*

Section 548(a) is both neutral and generally applicable and its effect on the practice of tithing purely incidental to the practice of equal distribution to an insolvent debtor's creditors. The same may be said of Colorado Revised Statutes § 38–08–106.

With respect to the Religious Freedom Clause of the Colorado Constitution, Article II, § 4 provides:

> The free exercise and enjoyment of religious profession and worship, without discrimination, shall ... be guaranteed.... No person shall be required to attend or support any ministry or place of worship, religious sect or denomination against his consent. Nor shall any preference be given by law to any religious denomination or mode of worship.

Colo. Const., Art. II, § 4.

The Colorado Supreme Court has held: "Although the provisions of Article II, Section 4 are considerably more specific than the Establishment Clause of the First Amendment, we read them to embody the same values of free exercise and governmental non-involvement secured by the religious clauses of the First Amendment." *Young v. Division of Employment & Training,* 650 P.2d 515, 525 (Colo.1982).

I find the avoidance of the tithes and contributions under the 11 U.S.C. § 548 and Colorado Revised Statutes § 38–8–106 does not violate the Debtors' right to free exercise of religion and freedom of speech protection under either the United States Constitution or the Colorado Constitution. Judgment is

therefore appropriate against the Defendant on the fourth affirmative defense.

### G. *Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb.*[2]

The fifth affirmative defense asserts the application of § 548 of the Code and Colorado Revised Statutes § 38–8–106 to recover tithes and/or contributions to the Defendant violates RFRA, 42 U.S.C. § 2000bb, because it substantially burdens the Debtors' exercise of religion and is not the least restrictive means of furthering a compelling governmental interest.

RFRA pertinently provides:

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1.

Some courts have concluded RFRA precludes a trustee from recovering tithes under § 548(a)(2). In *Christians v. Crystal Evangelical Free Church (In re Young),* 82 F.3d 1407, 1418–20 (8th Cir.1996), the majority of the Eighth Circuit panel held recovery by the trustee would substantially burden the debtors' free exercise of religion and that the government's interests in allowing debtors a fresh start and protecting creditors were not compelling. Agreeing with the *In re Young* majority, the court in *Fitzgerald v. Magic Valley Evangelical Free Church, Inc. (In re Hodge),* 200 B.R. 884, 895–899 (Bankr.D.Idaho 1996), reached the same conclusion and

found § 548(a)(2) did not meet the "least restrictive means" requirement of RFRA.[3]

Although the district court in *In re Newman*, 203 B.R. at 476–77, conceded the recovery by the trustee burdened the debtors' exercise of religion to some degree, it found the defendant church had failed to show such recovery constituted a substantial burden on the debtors' exercise of religion. The dissenting judge in *In re Young*, reached the same conclusion. 82 F.3d at 1421.

The Tenth Circuit has stated: "To exceed the 'substantial burden' threshold, government regulation must significantly inhibit or constrain" an individual's "ability to express adherence to his or her faith." *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir.1995). Further, "the incidental effects of otherwise lawful government programs 'which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs' do not constitute substantial burdens on the exercise of religion." *Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir.1996) (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–51, 108 S.Ct. 1319, 1326, 99 L.Ed.2d 534 (1988)).

The religious adherent has the burden of proving the existence of a substantial interference with the right of free exercise. *Werner*, 49 F.3d at 1480 n. 2. Once this threshold showing has been made, the burden shifts to the government to show that the challenged regulation furthers a compelling governmental interest in the least restrictive manner. 42 U.S.C.2000bb–1(b).

As in *In re Newman*, I find the Defendant has failed to show either the federal or state statute at issue substantially burden · their exercise of religion. While the Plaintiff's recovery imposes a burden in thwarting the aspect of tithing involving giving the Defendant the economic benefit of the tithe to support its mission, such burden is not substantial so as to force the government to prove its action is taken in furtherance of a compelling governmental interest.

Section 548 interferes minimally with the debtors' ability to tithe, applying only when the debtors are insolvent and only when they receive no reasonably equivalent value for their tithe and only for the one year period immediately preceding the filing of the petition. Beyond that period, the Debtors are afforded the opportunity to tithe. Indeed, Kenneth Bloch now tithes to a church in Colorado Springs.

Further, the operation of § 548 did not constrain the Debtors' conduct nor their ability to express adherence to their faith. It is undisputed that the Debtors remained members of the Defendant after the filing of their bankruptcy petition and the commencement of this adversary proceeding. They are still members but quit attending because of their divorce and Kenneth Bloch's move to Colorado Springs.

■ Even if I were to find § 548 and Colorado Revised Statutes § 38–8–106 place a substantial burden on the Debtors' religious practices, I agree with the court in *In re Newman*, 203 B.R. at 477, that such burden is justified by a compelling governmental interest. "The government's significant interests in maintaining an equitable system for protecting creditors, for permitting debtors to obtain a 'fresh start' from overwhelming debt, and in avoiding excessive entanglement with religious matters are compelling." *Id.* I disagree with the contrary conclusion reached by the majority in *In re Young*, 82 F.3d at 1420.

Further, I find the provisions of the federal and state statutes at issue satisfy the "least restrictive means" requirement of RFRA in that they "balance the need to protect unsecured creditors with the debtor's potentially conflicting interest in disposing of property as he sees fit." *See In re Newman*, 203 B.R. at 475 n. 5, 477.

Accordingly, I find summary judgment is appropriate against the Defendant on its fifth affirmative defense under RFRA.

---

**3.** The court in *In Re Hodge* nevertheless allowed the trustee to recover after finding that RFRA was unconstitutional and that such recovery did not violate the debtors' First Amendment rights. RFRA's constitutionality is not raised in the instant case.

### IV. *Certification of Constitutional Question.*

On January 4, 1996, before the parties filed their cross-motions for summary judgment, the Defendant filed a Notification of Claim of Unconstitutionality pursuant to D.C.Colo.LR 24.1.

Such notice is required by a party who questions the constitutionality of a federal and/or state statute in an action where neither the United States nor the state nor any of its/their agents is a party to the suit. *Id.* The notice identifies the suit and each questioned statute and describes the grounds on which unconstitutionality is asserted.

Upon receipt of such notice of unconstitutionality, the court must comply with the certification provisions of 28 U.S.C. § 2403. *Id.* (C). Section 2403 requires the court, in any action to which the United States or any agent thereof is not a party, wherein the constitutionality of an Act of Congress affecting the public interest is drawn into question, to certify such fact to the Attorney General and to permit the United States to intervene for the presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. Similarly, where the constitutionality of a state statute affecting the public interest is drawn into question, the court shall certify such fact to the attorney general of that state and similarly permit the attorney general to intervene.

The Defendant's Notice of Unconstitutionality states Colorado Revised Statute § 38-8-106 and 11 U.S.C. § 548, as applied, violate the rights of citizens to exercise religious freedom as guaranteed by Article II, Section 4 of the Colorado Constitution and the First Amendment of the United States Constitution.

It has come to my attention that, on January 16, 1996, the Clerk of this court complied with 28 U.S.C. § 2403, insofar as certification under § 2403 to the Colorado Attorney General was required, but failed to do so insofar as such certification to the United States Attorney General was required.

" '[F]ailure to notify the Attorney General is not a jurisdictional defect, and belated notice satisfies any requirement.' " *In re Young,* 82 F.3d at 1412-13 (quoting *Tonya K. v. Board of Education,* 847 F.2d 1243, 1247 (7th Cir.1988) (further citations omitted)). Certification has occurred even after judgment at the appellate level. *See Merrill v. Town of Addison,* 763 F.2d 80, 83 (2d Cir.1985).

The purpose of the rule is "to give the Executive Branch both the time to make its views known and the opportunity to intervene in order to take a direct appeal to the Supreme Court if the decision should be adverse to the statute's constitutionality." *Tonya K.,* 847 F.2d at 1247.

I have determined neither the federal nor state statutes under consideration violate the United States Constitution or the Colorado Constitution. I see no purpose in delaying the issuance of this opinion for the purposes of certification, nor do I consider belated certification to prejudice or otherwise impair the ability of the United States or the State of Colorado to fully present their views on the question of the constitutionality of the relevant statutory sections, should an appeal be taken from this order. *See Merrill,* 763 F.2d at 83.

Accordingly, I direct the Clerk of the court to serve a copy of this Memorandum Opinion and Order on the Attorney General of the United States, which will serve as a notice of certification of the fact that the constitutionality of 11 U.S.C. § 548 has been drawn into question in this case.

### V. *Conclusion.*

For the aforesaid reasons,

IT IS ORDERED THAT the Plaintiff's Motion for Summary Judgment is GRANTED and that of the Defendant is DENIED. Specifically, summary judgment is granted in favor of the Plaintiff and against the Defendant on the following claims for relief, the first pursuant to 11 U.S.C. § 548; the second pursuant to 11 U.S.C. § 544 and Colo.Rev. Stat. § 38-8-106; and the third under 11 U.S.C. § 550; and on the following affirmative defenses, the second (estoppel and laches), third (action not commenced within statutory time period), fourth (violation of the

Free Exercise Clause and Freedom of Speech protection as provided by the First Amendment of the United States Constitution) and fifth (violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb (a));

IT IS FURTHER ORDERED THAT, absent the filing, within twenty days of the date hereof, of a stipulation between the parties concerning the amounts tithed and contributed by the Debtors to the Defendant with respect to the first and second claims for relief, a hearing will be held at 9:00 a.m. on Thursday, May 22, 1997 in Courtroom C–401 to determine such amounts. Thereafter, a further order will be entered awarding the Plaintiff the appropriate amounts, together with interest and costs.

IT IS FURTHER ORDERED THAT the Clerk of the court is to serve a copy of this Memorandum Opinion and Order on the Attorney General of the United States, which will serve as a notice of certification of the fact that the constitutionality of 11 U.S.C. § 548 has been drawn into question in this case.