**In re James D. PAYNE, Kileen N. Payne Debtors.**

No. 06–50029.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

July 10, 2006.

279

John F. Cannizzaro, Marysville, OH, for Debtors.

## MEMORANDUM OPINION ON OBJECTION TO CONFIRMATION OF HONDA FEDERAL CREDIT UNION

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on March 9, 2006, to consider confirmation of the Chapter 13 Plan (Doc. # 2) filed by James and Kileen Payne (the "Debtors"), and the Objection to confirmation (Doc. # 20) filed on behalf of Honda Federal Credit Union. Present at the hearing were the Chapter 13 Trustee Frank Pees, his counsel John Kennedy, counsel for the Debtors John Cannizzaro, and counsel for Honda Federal Credit Union ("Credit Union") David Whittaker.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the general order of reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L).

The Debtors' Chapter 13 Plan, as amended [1] (the "Plan"), proposes that the

Debtors surrender the vehicle in full satisfaction of the claim of Honda Federal Credit Union, who holds a lien on the vehicle. The Credit Union objects to this treatment, pointing to § 1325(a)(5), as revised by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC PA").

The parties entered into a stipulation of the facts relevant to this matter as follows:

On or about January 31, 2004, Debtor Kileen Payne borrowed approximately $27,140.00 from the Credit Union for the purpose of purchasing a 2002 Ford Explorer (the "Vehicle") for her personal use. Consistent with the typical financing transaction, Ms. Payne executed a note agreeing to pay the Credit Union upon the terms and conditions contained therein, and a security agreement granting the Credit Union a lien on the vehicle. The Credit Union properly perfected its security interest by having its lien noted on the title of the vehicle. The Debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on January 5, 2006, less than 910 days after the purchase of the Vehicle. At the time of filing of the Petition for Relief, the Debtor/Wife owed the Credit Union approximately $23,340.00. If the Vehicle is liquidated, in all likelihood the proceeds of sale will be insufficient to pay the balance due to the Credit Union in full. The Debtors' Plan proposes that the Debtors surrender the Vehicle to the Credit Union in full satisfaction of the Credit Union's claim.

 Section 1325(a)(5) offers three alternatives for treatment of allowed secured claims under a Chapter 13 plan. As revised by BAPCPA, section 1325(a)(5) of the Bankruptcy Code, provides as follows:

1. The Debtors filed an Amended (sic) Chapter 13 Plan (Doc. # 18) which amended only the

amount of Debtors' payments into the Plan and had no effect on the provision at issue.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (I) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

. . . .

11 U.S.C. § 1325(a)(5). In short, for purposes of this discussion, this provision affords the chapter 13 debtor three alternatives for treatment of a secured creditor's claim through the chapter 13 plan: (1) treatment to which the secured creditor consents, (2) retention of the creditor's collateral and payment of the value of that collateral as a secured claim, with any balance treated as an unsecured claim (often referred to as "cramdown"), and (3) surrender of the collateral. The last alternative is the one selected by the Debtors in the instant case.

The final sentence of § 1325(a), which was added by BAPCPA, is inserted after § 1325(a)(9), a provision not otherwise relevant to the matter under consideration.[2] Given its awkward placement and lacking any identifying number or letter, the sentence has been termed by many as the "hanging paragraph." It places special conditions on the options for treatment of secured claims that meet certain criteria:

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is subject of the claim, the debt was incurred within the 910–day [period][3] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor. . . .

11 U.S.C. § 1325(a) "hanging paragraph". All of the key factors that trigger applica-

---

**2.** Section 1325(a)(9) requires a debtor to file all applicable federal, state and local tax returns for the previous four years before a plan can be confirmed.

**3.** The Court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

tion of the "hanging paragraph" of § 1325(a) are present in the instant case.

The relevant portion of section 506 was unchanged by BAPCPA and states:

(a)($l$) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property....

11 U.S.C. § 506.

The Debtors argue, in short, that the statute is plain and simple: That the "hanging paragraph" applies to all claims which fall under § 1325(a)(5), and as a result, excepts all such claims from the influence of § 506.

The Credit Union argues that Congress obviously intended the "hanging paragraph" to apply only to claims subject to § 1325(a)(5)(B) and not to claims subject to subparagraph (C). The Credit Union suggests, not inaccurately, that through the BAPCPA amendments to § 1325(a)(5), Congress was attempting to remedy a perceived abuse by those who buy vehicles on credit on the eve of bankruptcy and then utilize the cramdown provisions of the Bankruptcy Code to pay the secured creditor a lesser amount than its full claim. So, to avoid this potential abuse, at least in Chapter 13 cases, Congress modified § 1325 with the "hanging paragraph" to address such a situation. Further, the Credit Union suggests that Congress did not need to say more to effectuate limited application of the "hanging paragraph" inasmuch as § 506 does not and never has applied in a liquidation setting, but rather

that this process is governed by Article 9 of the Uniform Commercial Code (as adopted in Chapter 1309 of the Ohio Revised Code). Thus, § 506 has never applied to subparagraph (C) of § 1325(a)(5) and the "hanging paragraph" has not changed this. The Chapter 13 Trustee agrees with the Credit Union's interpretation of the statute.

In the pre-BAPCPA environment, § 506 served to bifurcate the secured and unsecured portions of an undersecured creditor's claim. This most commonly became an issue in chapters 11, 12, and 13. In an endeavor to effectuate the provisions of § 506, parties in a pre-BAPCPA bankruptcy proceeding filed motions requesting the court to value collateral or determine the extent of secured claims, or debtors would propose bifurcated treatment of a secured creditor's claim through their chapter 11, chapter 12 or chapter 13 plans. Although rarely addressed in a chapter 7 by way of a motion or other procedural mechanism, the undersecured creditor in a chapter 7 case could liquidate its collateral (after modification of the automatic stay or abandonment of the collateral) and file an unsecured claim for any deficiency or estimated deficiency in order to participate in any distribution by the chapter 7 trustee. The BAPCPA amendments changed this approach for those chapter 13 debtors who fall within the parameters of the "hanging paragraph." This provision essentially appears to prohibit the bifurcation of a claim into secured and unsecured components.

 As recognized by both parties, the language of the statute is the starting point for interpretation by the Court. *United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the statute is clear, there is no need for the Court to inquire beyond the plain language of the statute. *Id.* Furthermore, where the statutory language is

282

clear and unambiguous, the Court may not speculate as to Congress' purpose; if, however, the language is ambiguous or would lead to an absurd result, the Court may try to discern legislative intent. *In re McNabb*, 326 B.R. 785 (Bankr.D.Ariz. 2005).

 The Sixth Circuit Court of Appeals addressed a similar dilemma of statutory interpretation in *First Union Mortgage Corporation v. Eubanks (In re Eubanks)*, 219 B.R. 468, 471 (6th Cir. BAP 1998). The Court recognized that the determination of an "allowed secured claim" is achieved through application of § 506(a). *See also Ron Pair*, 489 U.S. at 238–39, 109 S.Ct. 1026. Analogous to the instant case, the *Eubanks* court was addressing a statutory pattern whereby one section of § 1322 modified another section of 1322 and referred to the application of yet another provision of the Bankruptcy Code, that being section 1325(a)(5). As stated by the *Eubanks* court, quoting the *Ron Pair* court, "The plain meaning of legislation should be conclusive except in the 'rare cases [in which] the literal interpretation of a statute will produce a result demonstrably at odds with the intention of the drafters.'" *Id.* at 471 (alteration in original). The *Eubanks* court went on to again quote the Supreme Court, stating that "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary that language must ordinarily be regarded as conclusive'" *Id.* at 473, *citing Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 1169, 122 L.Ed.2d 525 (1993). Unlike that situation presented to the *Eubanks* court, there is a dearth of legislative history to guide this Court. There exists a general comment that addresses the application of the "hanging paragraph" to § 1325(a)(5)(B), in the form of a blanket statement that the new provisions of § 1325(a) will eliminate the application of § 506 to vehicles acquired within 910 days prior to filing of the petition for relief. However, there is absolutely nothing in the legislative history that discusses the interplay between the "hanging paragraph" and § 1325(a)(5)(C). What little legislative history exists fails to reflect any intention to limit the scope of the "hanging paragraph" to only certain provisions of § 1325(a)(5). *See*, H.Rep. 109–31, Pt.1 at 71–72, 109th Cong., 1st sess. (2005), U.S.Code Cong. & Admin.News 2005, pp. 88 [*See*, Section titled "Title III: Discouraging Bankruptcy Abuse" and Section titled "Highlights of Bankruptcy Reforms"]. Silence in the legislative history cannot be utilized to create an ambiguity in the statutory language. As Justice Blackmun stated in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), "Of course where the language [of the statute] is unambiguous, silence in the legislative history cannot be controlling."

 This Court having studied the "hanging paragraph" of § 1325(a) finds the language unambiguous and clear. The "hanging paragraph" of § 1325(a) does not limit its application to claims treated under § 1325(a)(5)(B). It states quite simply, that "[f]or purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph...." Thus, it must apply to claims described in § 1325(a)(5)(C) as well. The plain meaning of this statute cannot be overcome by silence in the legislative history. While Congress may have intended to afford additional protections to creditors with the BAPCPA amendments, the Court is not satisfied that it intended a different result with the hanging paragraph of § 1325(a) than is set forth in the plain language. The Court agrees with the Credit Union's

analysis that, despite its partial moniker of "Consumer Protection Act", many of the changes wrought by BAPCPA were instigated by the credit industry and Congress did not intend to lessen the rights of creditors through the BAPCPA amendments. However, the Court cannot infer limitations on the application of the "hanging paragraph" which are not present. Had Congress intended to limit application of the statute, it could have easily done so within the language of the "hanging paragraph" of § 1325(a) or within the language of § 506. Congress is assumed to know and understand the effect of its legislation, and this Court may not rewrite the statute as enacted by Congress. The Supreme Court recognized the courts limitations in *Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004), in which the petitioner sought to constructively insert language into the statute at issue. In declining to do so, the Supreme Court stated, "Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results from 'deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill.' *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (citing *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962))."

From a practical standpoint, this application of § 1325(a)(5) requires the creditor to forego the opportunity to take advantage of the provisions of § 506 should it liquidate the collateral for less than the amount it is due, just as it requires the debtor to do so should the debtor decide to retain the vehicle. While this may appear to be inconsistent with the overall goals of BAPCPA to provide greater protections to creditors, the Court is not prepared to say that this is an absurd result in light of the sparse guidance from Congress.[4]

The Credit Union's argument that § 506 has never applied to the surrender and liquidation of collateral is true. However, this argument is inapposite: the issue at hand is not the disposition of collateral; the issue at hand is the treatment of claims of certain creditors. Article 9 of the Uniform Commercial Code governs the disposition of collateral, responsibilities of secured creditors, application of proceeds, and rights to recovery of deficiency claims generally. Section 506 addresses the allowance and categorization of claims within a bankruptcy proceeding held by creditors having a security interest, including claims in a chapter 13 proceeding and addressed by a plan under § 1325. Section 506 specifies that a secured claim is determined "in light of the purpose of the valuation and of the proposed disposition or use of" the collateral. It is pursuant to this provision in the preBAPCPA environment that an undersecured creditor could file an unsecured claim for any deficiency after liquidation of its collateral. *See In re Ezell,* 338 B.R. 330 (Bankr.E.D.Tenn.2006). To hold that § 506 does not apply in those instances when a secured creditor liquidates its collateral would prohibit such a creditor from submitting an unsecured claim for any deficiency after liquidation, regardless of the type of bankruptcy proceeding in which a debtor is involved. This is clearly not the case. While the Credit Union's arguments are compelling in light of the well known general purposes

---

4. While the provisions of BAPCPA were largely to effectuate additional protections for creditors, it is not entirely bereft of consumer-friendly provisions. *See, e.g.,* provisions pertaining to debt relief agencies, reaffirmation agreements, and extension or imposition of the automatic stay under § 362(c)(3) and (4).

of BAPCPA, in the absence of clear language or legislative history, the Court cannot guess or presume Congress' motives regarding a particular statutory provision, and the Court must give plain meaning to the "hanging paragraph" of § 1325(a).

In accordance with the foregoing, the Objection to Confirmation by Honda Federal Credit Union must be overruled. A separate Order will be entered consistent with this Memorandum.