In re: **Ronald L. FEDDERSEN and Karen L. Feddersen, Debtors.**

No. 06–30088.

United States Bankruptcy Court, S.D. Illinois, East Saint Louis Division.

Nov. 15, 2006.

Marilyn J. Washburn, St. Louis, MO, for Creditor–Objector.

Karl J. Wulff, Collinsville, IL, for Debtor.

*ORDER OVERRULING DAIMLER-CHRYSLER'S OBJECTION TO DEBTORS' CHAPTER 13 PLAN*

JAMES K. COACHYS, Bankruptcy Judge.

This matter came before the Court on DaimlerChrysler Financial Services Americas, L.L.C.'s, as successor in interest to DaimlerChrysler Services North America L.L.C., ("Daimler") Objection to Confirmation of Debtors Ronald L. Feddersen and Karen L. Feddersen's ("Debtors") Chapter 13 plan (the "Plan"). The Court conducted a hearing on October 19, 2006, and having reviewed the parties' various submissions, now issues the following Order.[1]

Debtors filed a petition under Chapter 13 of the United States Bankruptcy Code on January 25, 2006. Within 910 days of the petition date, Debtor had entered into a purchase-money security agreement with Daimler for the purchase of a 2004 Dodge Caravan (the "Vehicle"). Pursuant to their Plan, Debtors have proposed to surrender the Vehicle to Daimler in full satisfaction of Daimler's claim. Daimler has objected to that treatment.

### Discussion and Decision

The parties' dispute arises as a result of sweeping changes made to the United States Bankruptcy Code, and in particular to Code § 1325(a)(5), by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which went into effect on October 17, 2005. As amended by BAPCPA, § 1325(a)(5) now provides in relevant part:

(a) Except as provided in subsection (b), the court shall confirm a plan if-

(5) with respect to each allowed secured claim provided for by the plan-

(A) the holder of such claim has accepted the plan;

(B) the plan provides that-

\* \* \* \* \* \*

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

(iii) if-

    (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

    (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder . . . .

    \*     \*     \*     \*     \*     \*

*For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.*

11 U.S.C. § 1325(a)(5) (italics added).[2]

■ Pre–BAPCPA, § 506(a)[3] of the Code provided for the bifurcation of secured claims into unsecured and secured portions based on the value of the collateral, without regard as to when such collateral was purchased. If a debtor chose to retain and pay for the collateral through the Chapter 13 plan, he could "cram down" the debt by paying the value of the collateral as a secured claim, while paying the unsecured portion pro rata with other unsecured creditors. If a debtor chose instead to surrender the collateral, the creditor would file either an estimated unsecured deficiency claim using the § 506(a) bifurcation process or would first sell the collateral as prescribed under state law and then file a claim for a deficiency. Either way, the claim would be paid pro rata with other unsecured claims. Under BAPCPA, a debtor may still "cram down" a secured claim, so long as the collateral was not purchased within 910 days of the petition date or otherwise within the scope of the Anti–Cramdown Paragraph.

Here, the Debtors concede that Daimler's claim is subject to the Anti–Cramdown Paragraph in that the Vehicle was purchased within 910 days of the petition date for their personal use but argue that they may nevertheless surrender the Vehicle through their plan pursuant to § 1325(a)(5)(C) in full satisfaction of Daimler's "secured" claim. In other words, the Debtors contend that pursuant to the

**2.** The italicized paragraph quoted above is often referred to as the "hanging paragraph" or the "anti-cramdown paragraph." For this discussion, the Court will refer to it as the "Anti–Cramdown Paragraph."

**3.** Section 506, as amended by BAPCPA, now provides in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of the creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

Anti–Cramdown Paragraph, Daimler is no longer allowed to bifurcate its claim under § 506 to assert either an unsecured or secured "deficiency" claim.

A growing number of courts have already addressed this issue and have almost universally concluded that a creditor may not assert a deficiency claim upon the surrender of collateral subject to the Anti–Cramdown Paragraph. The leading case on the issue is *In re Ezell*, 338 B.R. 330 (Bankr.E.D.Tenn.2006). As here, the debtors in *Ezell* proposed to surrender a 910–vehicle in full satisfaction of the creditor's secured claim, arguing that the Anti–Cramdown Paragraph eliminated the creditor's ability to assert a deficiency claim. The creditor argued that, in the absence of bifurcation under § 506, its entire claim must be treated by the plan as secured and paid in full. Various intervenors-consisting mostly of lending institutions-further argued that § 506 did not apply pre-BAPCPA in cases involving the surrender of collateral and, thus, that it did not apply post-BAPCPA.

In ruling in favor of the Debtor, the *Ezell* court examined the mechanics and historical application of §§ 1325(a)(5) and 506 and found that § 506 clearly applied under pre-BAPCPA law to situations in which the debtor surrendered the subject collateral to the secured creditor pursuant to § 1325(a)(5)(C). *Ezell*, 338 B.R. at 338. From there, the court concluded that the Anti–Cramdown Paragraph's language that § 506 "shall not apply" to 910–Vehicles was clear and, as such, that it had "no choice but to interpret the Anti–Cramdown paragraph as written, i.e., that it applies to both Revised § 1325(a)(5)(B) and (C)." *Id.* at 341. Other courts have reached consistent conclusions. *See, e.g., In re Payne*, 347 B.R. 278, 283 (Bankr.S.D.Ohio2006) ("[t]he plain meaning of this statute cannot be overcome by silence in the legislative

history."); *In re Long*, 2006 WL 2090246 *1 (Bankr.E.D.Tenn.2006) ("the court finds that the Anti–Cramdown Paragraph, as mandated by its terms, applies equally to both Revised § 1325(a)(5)(B) and Revised § 1325(a)(5)(C)."); *In re Brown*, 346 B.R. 868, 874 (Bankr.N.D.Fla.2006) ("[s]ince the language of the Hanging Paragraph is unambiguous, the Court must apply it as written unless doing so would yield a result that is either demonstrably at odds with congressional intent or absurd. Applying the Hanging Paragraph as written yields no such result."); *In re Sparks*, 346 B.R. 767, 773 (Bankr.S.D.Ohio 2006) ("[f]rom a practical standpoint, this application of § 1325(a)(5) requires the creditor to forego the opportunity to take advantage of the provisions of § 506 should it liquidate the collateral for less than the amount it is due, just as it requires the debtor to do so should the debtor decide to retain the vehicle. While this may appear to be inconsistent with the overall goals of BAPCPA to provide greater protection to creditors, the Court is not prepared to say that this is an absurd result in light of the sparse guidance from Congress."); and *In re Osborn*, 348 B.R. 500, 505 (Bankr. W.D.Mo.2006) ("the plain language of § 1325(a)(5) and the hanging paragraph mandate that, as a matter of law, a secured creditor of the kind described in the hanging paragraph has a secured claim for the full amount due as of the date of the filing of the petition, regardless of whether the debtor intends to retain the collateral or surrender it. That being the case, these creditors are not entitled to a deficiency claim if the collateral is surrendered under § 1325(a)(5)(C).").

The Court agrees that the Anti–Cramdown Paragraph, while arguably awkwardly incorporated into § 1325(a)(5), is clear and unambiguous. On its face, the provision's application is not limited to

claims treated under § 1325(a)(2)(B). Rather, it clearly states that "for purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph ...." Accordingly, the Court finds that it applies equally to claims treated under § 1325(a)(2)(C). That conclusion, however, does not necessarily resolve the parties' dispute. A court may look past "the express language of a statute ... where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *United States v. 916 Douglas Ave.*, 903 F.2d 490, 492 (7th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991); *see also Marlowe v. Bottarelli*, 938 F.2d 807, 812 (7th Cir.1991) ("The general rule is that where a text is unambiguous, its plain language controls except in the rare case where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of the drafters.' ") (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991)) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

While the Court may be justified under the rules of statutory construction to look past the unambiguous language of the Anti–Cramdown Paragraph, there is not much at which to look. As explained by *Ezell*, "a review of the legislative history ... does not provide any particular insight that is helpful to the court; however, it also does not provide any evidence that the court's determination does not comport with Congressional intent ...." *Ezell*, 338 B.R. at 340. What little legislative history there is simply mirrors the statutory language. *Id.* In the absence of any legislative history, there is simply no evidence by which this Court could conclude that the Anti–Cramdown Paragraph leads to an "absurd result." In reaching that same conclusion, the court in *Brown* explained:

> In further support of its arguments, Wells Fargo points out that the provision of BAPCPA which amends § 1325(a) is entitled "Protections for Secured Creditors." The Hanging Paragraph does indeed offer significant protection to secured creditors by not allowing debtors to retain recently purchased vehicles while only paying a fraction of what is owed. Wells Fargo contends that it is "illogical and against the expressed intent of Congress" to interpret § 1325(a), including the Hanging Paragraph, to foreclose its right to a deficiency claim in this situation. As far as this Court can ascertain, Congress never expressed any intent contrary to the result reached by the *Ezell* court and this Court, and it is illogical to conclude that the same language, *i.e.,* the Hanging Paragraph means something different in different contexts. Secured creditors, like every other party to a bankruptcy case, have to take both the good and the bad. In bankruptcy, everyone gets a piece of the pie, but almost no one gets all they want or are owed. Accordingly, it is entirely logical that Congress apportioned the pie to favor some creditors in some situations but others in different situations. Both secured and unsecured creditors' lobbies were represented during the drafting and enactment of BAPCPA. Like in bankruptcy, each probably received some of what they wanted, but neither received all they would have liked. Contrary to Wells Fargo's argument, the Court's interpretation and application of the Hanging Paragraph does not result in a "windfall" to debtors, as any benefit would inure largely to the unsecured creditors and not the debtor.

*Brown,* 346 B.R. at 875. In the absence of any contrary legislative history, the Court agrees that it would be presumptuous to conclude that a literal application of the Anti–Cramdown Paragraph is inconsistent with BAPCPA's overall goals.

Furthermore, as the *Ezell* court and others have discussed, § 506 clearly applied to pre-BAPCPA § 1325(a)(5)(C). The result mandated by the Anti–Cramdown Paragraph's plain language, then, should come as no surprise. Bankruptcy reform legislation was first proposed in 1999, in essentially the same form as BAPCPA. In the Court's opinion, Congress had ample time and the input of a resourceful and vocal secured creditor lobby to effectuate its intent through the express language of Revised § 1325(a)(5) and the Anti–Cramdown Paragraph. If it failed to do so, then further amendments may be necessary. Until then, however, the Court will apply the Anti–Cramdown Paragraph as written.

### *Conclusion*

Based on the foregoing, the Court holds that a secured creditor may not avail itself of § 506(a)(1)'s claim bifurcation process to assert a deficiency claim-secured or unsecured-where the debtor surrenders collateral subject to the Anti–Cramdown Paragraph. Accordingly, Daimler's objection to the Debtors' Plan is overruled.