**In re Michael Justin QUICK,
also known as Justin
Quick, Debtor.**

**DaimlerChrysler Financial Services Americas LLC, successor by merger to DaimlerChrysler Services North America LLC, Appellant,**

v.

**Michael Justin Quick, Appellee.**

**In re John Jason Ballard and Summer Michelle Ballard, formerly known as Summer Ray, Debtor.**

**DaimlerChrysler Financial Services Americas LLC, successor by merger to DaimlerChrysler Services North America LLC, Appellant,**

v.

**John Jason Ballard and Summer Michelle Ballard, Appellees.**

**BAP Nos. NO–07–025, NO–07–026.
Bankruptcy No. 06–10729–M, 06–11031–M**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 5, 2007.

Submitted on the briefs: *

Layla J. Dougherty of Love, Beal & Nixon, P.C., and Stephen L. DeGiusti of Crowe & Dunlevy, Oklahoma City, OK, for Appellant.

J. Scott McWilliams and Jared C. Smith of J. Scott McWilliams, P.C., Tulsa, OK, for Appellees.

Before CLARK, NUGENT, and McNIFF, Bankruptcy Judges.

CLARK, Bankruptcy Judge.

This appeal involves undisputed facts and a single legal issue, which is whether a debtor's surrender of a "910 vehicle"[1] operates as full satisfaction of a secured creditor's claim, thereby precluding the filing of an unsecured claim for a deficiency. Because we hold that it does, we affirm the bankruptcy court's judgment.[2]

BACKGROUND

Debtors each purchased a vehicle for personal use within 910 days of the filing of their Chapter 13 bankruptcies. Both vehicles were secured by purchase money security interests held by DaimlerChrysler Financial Services Americas LLC ("Chrysler"), and each vehicle was worth less at the time of filing than the remaining debt owed on it.[3] Debtors in both cases filed plans proposing to surrender their vehicle in full satisfaction of the secured debt on it. Chrysler objected to confirmation of both plans, asserting that it was entitled to

liquidate the vehicles and then file unsecured claims for any resulting deficiencies.

DISCUSSION

■ When the Bankruptcy Code was amended by BAPCPA in 2005, an unnumbered paragraph was added to § 1325, between subparagraphs (a) and (b). Now commonly referred to as the "hanging paragraph," it provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing[.]

The referenced "paragraph (5)" is § 1325(a)(5), which specifies three ways in which a debtor may obtain court approval of a plan with respect to the treatment of secured claims: (1) obtain the creditor's acceptance of the plan; (2) "cram down" the claim pursuant to § 506 and pay it within the plan; or (3) surrender the collateral.[4] Section 506 bifurcates secured

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. As defined by the "hanging paragraph" of 11 U.S.C. § 1325.

2. *See In re Quick,* 360 B.R. 722 (Bankr. N.D.Okla.2007).

3. Both petitions were filed after enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and are thus governed by the amended Code provisions, while the subject loans were entered into both pre-(Ballard) and post-(Quick) BAPCPA.

4. 11 U.S.C. § 1325 provides in pertinent part:

 (a) Except as provided in subsection (b), the court shall confirm a plan if—

 . . .

claims into secured and unsecured portions, with the secured portion limited to the value of the collateral at the time of filing, and the unsecured portion equal to the difference between the collateral's value and the balance of the loan.[5]

Pursuant to the hanging paragraph, the § 506 bifurcation process is no longer applicable to "910 debts."[6] As such, a debtor can no longer "cram down" a 910 debt and, instead, must pay the entire amount owed to the creditor in order to retain 910 collateral. This concept is universally accepted. However, a controversy has arisen regarding treatment of 910 debts when debtors choose to surrender the collateral. In such cases, a majority of published decisions hold that the hanging paragraph precludes 910 creditors from filing unsecured claims for any deficiency that remains after liquidation of the collateral,[7] while a

---

(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B) (i) the plan provides that—
(I) the holder of such claim retain the lien securing such claim until the earlier of—
(aa) the payment of the underlying debt determined under nonbankruptcy law; or
(bb) discharge under section 1328; and
(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
(iii) if—
(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
(C) the debtor surrenders the property securing such claim to such holder[.]

5. 11 U.S.C. § 506(a)(1) provides:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

6. Such debts are created when creditors make purchase money loans for vehicles intended for the debtor's personal use within 910 days of debtor's filing of a petition in bankruptcy, and the debts are secured by the purchased collateral. References herein to "910" loans, debtors, creditors, and collateral all relate to this situation, to which the hanging paragraph applies.

7. See, e.g., In re Osborn, 348 B.R. 500 (Bankr. W.D.Mo.2006), aff'd, 363 B.R. 72 (8th Cir. BAP 2007); In re Moon, 359 B.R. 329 (Bankr. N.D.Ala.2007); In re Gentry, No. 06–50204, 2006 WL 3392947(Bankr.E.D.Tenn. Nov.22, 2006); In re Turkowitch, 355 B.R. 120 (Bankr.E.D.Wis.2006); In re Feddersen, 355 B.R. 738 (Bankr.S.D.Ill.2006); In re Maggett, No. BK06–80573, 2006 WL 3478991 (Bankr. D.Neb. Oct.19, 2006); In re Bayless, No. 06 31517, 2006 WL 2982101 (Bankr.E.D.Tenn. Oct.18, 2006); In re Pool, 351 B.R. 747 (Bankr.D.Or.2006); In re Evans, 349 B.R. 498 (Bankr.E.D.Mich.2006); In re Nicely, 349 B.R. 600 (Bankr.W.D.Mo.2006); In re Sparks, 346 B.R. 767 (Bankr.S.D.Ohio 2006); In re Brown, 346 B.R. 868 (Bankr.N.D.Fla.2006); In re Payne, 347 B.R. 278 (Bankr.S.D.Ohio 2006); In re Ezell, 338 B.R. 330 (Bankr. E.D.Tenn.2006); In re Long, No. 06–30651, 2006 WL 2090246 (Bankr.E.D.Tenn. March 13, 2006); In re Durham, 361 B.R. 206 (Bankr.D.Utah 2006).

minority of published decisions hold that the hanging paragraph does not preclude such deficiency claims.[8]

Chrysler urges this Court to adopt the minority position allowing under-secured creditors to assert unsecured claims for deficiencies resulting from sales of collateral. In support of its position, Chrysler contends that since deficiency claims were allowed prior to the amendment of § 1325, precluding such claims would be "contrary to the spirit of BAPCPA," which it apparently asserts was enacted for the benefit of creditors. However, such a holding would require this Court to first determine that the hanging paragraph is ambiguous, thereby necessitating an examination of legislative history.[9] This we decline to do.

▆▆▆▆ Although Chrysler asserts that the purpose behind enactment of the hanging paragraph must be examined in order to interpret it, the cases relied upon do not support its position. For example, in *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), the Court first acknowledged that "[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes," and then noted that "*in rare cases* the literal application of a statute will produce a result *demonstra-*

*bly at odds* with the intentions of its drafters, and those intentions must be controlling." *Id.* at 571, 102 S.Ct. 3245 (emphasis added; internal quotation marks omitted). Moreover, an unambiguous statute may not be "interpreted" to match a court's determination of what Congress "meant" to say. *See Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234, 1243 (11th Cir. 2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 1815, 167 L.Ed.2d 356 (2007).

In this case, the language of the hanging paragraph is neither ambiguous, nor does literal application of its terms lead to a result that is demonstrably at odds with the apparent intentions of its drafters. Significantly, this Court is not persuaded that the sparse legislative history of the amendment of § 1325 supports Chrysler's assertion that the hanging paragraph was enacted solely for the benefit of secured creditors.[10] In any event, Congress easily could have specified that the hanging paragraph applies only to § 1325(a)(5)(B), but it did not.

We therefore hold that the hanging paragraph unambiguously precludes application of § 506 to the entirety of § 1325(a)(5), and no bifurcation of allowed secured claims may be effected in the exercise of any of a 910 debtor's three options under § 1325(a)(5). The effect of

---

8. *See, e.g., In re Wright,* 492 F.3d 829 (7th Cir. July 3, 2007); *In re Duke,* 345 B.R. 806 (Bankr.W.D.Ky.2006); *In re Zehrung,* 351 B.R. 675 (W.D.Wis.2006); *In re Particka,* 355 B.R. 616 (Bankr.E.D.Mich.2006); *In re Hoffman,* 359 B.R. 163 (Bankr.E.D.Mich.2006); *In re Morales,* 359 B.R. 211 (Bankr.N.D.Ill. 2007); *In re Blanco,* 363 B.R. 896 (Bankr. N.D.Ill.2007); *Silvers v. Wells Fargo Auto Fin.,* No. 4:07–CV–00012–HLM, 2007 WL 1812628 (N.D.Ga. May 10, 2007).

9. *See Starzynski v. Sequoia Forest Indus.,* 72 F.3d 816, 820 (10th Cir.1995).

10. Specifically, we do not agree that BAPCPA amendments that appear to benefit creditors must be interpreted in such a way as to benefit only creditors. In fact, many of the supposedly "pro-creditor" amendments appear reflective of the normal give and take of the legislative process. Thus, it may well be that elimination of deficiency claims was intended to offset, on behalf of 910 debtors, the benefit conferred upon secured 910 creditors by eliminating the cram down option. However, our determination of unambiguity eliminates the necessity of elucidating such an intent.

this elimination of bifurcation in 910 cases has been described as follows:

> The effect of the hanging paragraph is that a debtor no longer has this bifurcation tool at his or her disposal. If a creditor files a secured claim relating to 910 property and that claim is allowed under § 502, the debtor must treat the claim as fully secured. In a sense, a fiction arises that the 910 collateral is worth the exact amount of the proof of claim. So when a debtor proposes to retain the collateral, the debtor must propose to pay the entire claim as filed. Likewise, where the debtor proposes to surrender the collateral, the fiction created by the hanging paragraph serves to render the secured claim completely satisfied.

*In re Durham*, 361 B.R. 206, 209 (Bankr. D.Utah 2006). Thus, post-BAPCPA, 910 debtors may no longer retain collateral and cram down their loans, and 910 creditors may not recover deficiencies when collateral is surrendered.

Another argument Chrysler makes in support of bifurcation is that bifurcation of claims in surrender cases has always been based on state law and, therefore, elimination of the § 506(a) bifurcation process has no effect in such cases. This argument was rejected in *In re Ezell*, 338 B.R. 330 (Bankr.E.D.Tenn.2006), as follows:

> The argument that Pre–BAPCPA § 506(a) had no application to surrender under Pre–BAPCPA § 1325(a)(5)(C) is misplaced. Valuation of a creditor's allowed secured claim under Pre–BAPCPA § 506(a) was determined in light of the purpose of the valuation and of the proposed disposition or use of such property. Upon surrender under Pre–BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined, while, for cramdown purposes under Pre–BAPCPA § 1325(a)(5)(B), replacement value was the criteria.

*Id.* at 339–40 (citation, internal quotation marks, and footnote omitted). Thus, an "allowed unsecured claim comes into being not because of the sale pursuant to state law, but because, when § 506(a) is applied, the value of the collateral, whether determined by estimation for use under § 1325(a)(5)(B) or by surrender and eventual liquidation for use under § 1325(a)(5)(C), is less than the debt." *In re Osborn*, 363 B.R. 72, 77 (8th Cir. BAP2007).

 Finally, Chrysler contends that the elimination of its "state law" deficiency claim is a taking in violation of the Fifth Amendment to the United States Constitution.[11] However, a "secured creditor has two types of rights: the *contractual* right to obtain repayment of its debt with a fair rate of return in the form of interest payments and the *property right* the creditor

---

11. We note that this claim appears to be a constitutional challenge within the scope of 28 U.S.C. § 2403(a), which requires certification of such challenges to the United States Attorney General and allows intervention by the Attorney General in support of the statute's constitutionality. No such certification occurred in this case. However, given that both this Court and the bankruptcy court have upheld the constitutionality of the subject statute, we deem this violation of § 2403(a) to be harmless. *See Weinman v.* *Word of Life Christian Ctr. (In re Bloch)*, 207 B.R. 944, 952 (D.Colo.1997) (failure to notify is not jurisdictional, and belated notification where constitutionality is upheld is not prejudicial); *see also McClain v. Am. Student Assistance (In re McClain)*, 264 B.R. 230, 234 (Bankr.D.N.H.2001). However, the Clerk of this Court is directed to serve a copy of this Opinion on the United States Attorney General, which will serve as notice that constitutionality of 11 U.S.C. § 1325 was called into question in these cases.

has in the collateral that secures the debt. These two types of rights together constitute the 'bundle of rights' held by the secured creditor. Bankruptcy laws have long been construed to authorize the impairment of contractual obligations." *In re Nichols*, 440 F.3d 850, 854 (6th Cir. 2006). Thus, "there is nothing inappropriate about bankruptcy laws affecting a creditor's right to recover under state law" and creditors' rights "are curtailed in many ways once a debtor files bankruptcy." *In re Brown*, 346 B.R. 868, 876 (Bankr.N.D.Fla.2006). In fact, pre-BAPCPA § 1325(a)(5)(B), which allowed debtors to retain collateral and reduce contractual claims that exceeded the statutorily defined "value" of collateral to unsecured deficiency claims, was just such an impairment of creditors' rights. The current version of § 1325(a)(5), which restores those rights and imposes a lesser impairment in the case of collateral surrender is equally allowable.

CONCLUSION

The hanging paragraph of § 1325 is unambiguous and eliminates § 506 bifurcation in all 910 cases. Therefore, debtors' proposed surrender of vehicles in full satisfaction of their indebtedness to Chrysler is authorized and the bankruptcy court's denials of Chrysler's objections are affirmed.